UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SEAN C.,[1]

                                Plaintiff,                    **DECISION AND ORDER**

v.                                                       1:23-cv-1189-JJM

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 8].[2] The parties have consented to my jurisdiction [10]. Having reviewed their submissions [6, 8, 9], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 822-page administrative record [3] is presumed. On October 6, 2021, plaintiff filed an application for disability insurance benefits, alleging a disability beginning on March 13, 2020 arising from post-traumatic stress disorder ("PTSD") with panic disorder, anxiety, depression, and various physical conditions. Administrative Record

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

[3] at 17, 248. Plaintiff's claim was initially denied, and denied again upon reconsideration. Id. at 17, 99, 122. Plaintiff requested a hearing. Id. at 17, 141.

A.      **The Hearing**

On April 25, 2023, Administrative Law Judge ("ALJ") Stephen Cordovani conducted a telephone hearing. Id. at 41-86. Plaintiff was represented by an attorney. Id. at 41. At the hearing, plaintiff testified that he lived in a house with his wife and 11-year-old daughter. Id. at 46. His wife worked part-time. Id. Plaintiff had trouble keeping up with lawn maintenance, but he would occasionally use a push mower. Id. at 47-48. He would drive about once a week to pick up groceries, as well as to any medical appointments. Id. at 48-50. He may have also driven his daughter to martial arts class during the week. Id. at 51-52. He also drove a motorcycle in 2021. Id. at 62.

Plaintiff served in the military for nearly six years, separating in January 2017. Id. at 52-53. After the military, he worked as a customer service representative before being promoted to administrator. Id. at 53-54. He left that job in 2019, claiming anxiety affected his job performance. Id. at 54-55. He immediately took another job at a gas station. Id. at 55-56. That job was temporarily discontinued due to the COVID pandemic, and he declined to come back afterward. Id. at 58. He cited anxiety as the reason for his departure, though he apparently was also concerned about potential exposure to his high-risk wife. Id. He testified that his anxiety would cause involuntary shaking, shortness of breath, increased emotional responses and affect his ability to think. Id. at 65. He had been on medication for anxiety and depression but was no longer taking it. Id. at 72.

A vocational expert testified that an individual with the functional and environment limitations described in ALJ Cordovani's hypothetical could not perform any of

-2-

plaintiff's past relevant work except for cashier, but that there were jobs existing in significant numbers in the national economy that such a person could perform. Id. at 80-81.

**B.     The ALJ's Decision**

On May 30, 2023, ALJ Cordovani issued a decision denying plaintiff's claim. Id. at 14-35. He found that plaintiff had a "severe" impairment of post-traumatic stress disorder ("PTSD") in addition to several severe physical impairments. Id. at 20. In considering the "paragraph B" criteria relative to mental impairments, ALJ Cordovani assessed plaintiff with moderate limitations in the areas of "interacting with others", "concentrating, persisting or maintaining pace", and "adapting or managing oneself". Id. at 22-23. Plaintiff had "mild" limitations in the area of "understanding, remembering or applying information".

ALJ Cordovani found plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms to be inconsistent with treatment notes from the relevant time period that undermined certain parts of his testimony and demonstrated greater activities of daily living. Id. at 26-27. He found that plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R §404.1567(c) with some postural and environmental limitations. Id. at 24. He concluded that plaintiff would be able to understand, remember and carry out simple instructions and tasks, but undertake no supervisory duties, independent decision-making, or strict production quotas. Id. He could handle frequent interaction with supervisors, co-workers and the general public, but could tolerate only minimal changes in work routine and processes. Id.

ALJ Cordovani found that plaintiff could not perform any past relevant work, but that he retained the ability to perform jobs that exist in significant numbers in the national economy. Id. at 33-35. Accordingly, he found that plaintiff was not disabled. Id. at 35.

C.        **Relevant Record Evidence**

On April 15, 2017, clinical psychologist Sandra Jensen completed a "Disability Benefits Questionnaire" evaluating plaintiff's PTSD claim pursuant to his application for disability benefits from the Department of Veterans Affairs ("VA"). Id. at 479-85. She opined that plaintiff's symptoms were "consistent with a diagnosis of PTSD in the moderate range" and would cause "moderate social and occupational impairment". Id. at 485.

On March 14, 2022, consultative examiner Susan Santarpia, Ph.D. conducted a psychiatric evaluation of plaintiff. Id. at 429-32. Plaintiff reported a diagnosis of PTSD and panic attacks, for which he was prescribed medication and medical marijuana. Id. at 429. On mental status examination, Dr. Santarpia found plaintiff's demeanor cooperative, his manner of relating and presentation adequate, and found that he demonstrated full affect; intact attention, concentration, and memory; and average cognitive functioning. Id. at 430-31. She assessed plaintiff as being able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and to be aware of normal hazards and take appropriate precautions. Id. at 431. She assessed plaintiff with "[m]ild-to-moderate" impairment in interacting adequately with supervisors, coworkers, and the public; regulating emotion; controlling behavior; and maintaining well-being. Id. She concluded that, while plaintiff's evaluation results "appear to be consistent with psychiatric problems", such problems did not, by themselves, "appear significant enough to interfere with [plaintiff's] ability to function on a daily basis". Id.

On April 18, 2022, state agency psychological consultant P. Roy-Petrick, Ph.D. completed a Psychiatric Review Technique. Id. at 93-95. Dr. Roy-Petrick reviewed plaintiff's mental health history and Dr. Santarpia's report, and concluded that the "[o]verall evidence in file indicates [plaintiff's] psychiatric impairments are non-severe". Id. at 94. Dr. Roy-Petrick opined that plaintiff would have "mild" limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Id. at 93.

On July 15, 2022, Dr. Santarpia conducted a reconsideration psychiatric evaluation. Id. at 638. Her findings were the same as the previous evaluation. See id. at 638-41.

On July 29, 2022, state agency psychological consultant L. Blackwell, Ph.D. reviewed plaintiff's updated psychiatric history and Dr. Santarpia's reports, and concluded that his psychiatric impairments "remain non-severe". Id. at 111-13, 642-44. Dr. Blackwell reiterated Dr. Roy-Petrick's opinion that plaintiff would have "mild" limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Id. at 111.

## ANALYSIS

Plaintiff argues that ALJ Cordovani's decision requires remand because: (1) he erred in assessing the medical opinions of record; and (2) he failed to make specific findings regarding the impact of stress on plaintiff's ability to work. Plaintiff's Memorandum of Law ("MOL") [6-1] at 16-25.

A.     **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     Assessment of VA Medical Opinion**

Plaintiff argues that ALJ Cordovani failed to evaluate the medical opinion of Dr. Jensen, which indicated that he would be moderately limited in his ability to perform work activities due to his PTSD symptoms. [6-1] at 18. Dr. Jensen, in evaluating plaintiff's VA disability claim, indicated that plaintiff had an "occupational and social impairment" from PTSD that would cause an "occasional decrease in work efficiency with intermittent periods of inability to perform occupational tasks". [3] at 479. This evaluation was completed on April 15, 2017, which precedes plaintiff's alleged onset date by nearly three years.

While ALJ Cordovani did not address Dr. Jensen's opinion by name, he explained that he "cannot defer or give any specific evidentiary weight . . . to any prior administrative medical findings or medical opinions". Id. at 31. In addition to containing determinations of disability which are issues reserved to the Commissioner, he explained that these opinions were "vague and conclusory", "not expressed in vocationally relevant terms", and "utilize different standards than those required by the Social Security Regulations". Id.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [his] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). According to Social Security regulations, "[the ALJ] will articulate . . . how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [claimant's] case record". 20 C.F.R. §404.1520c(b). In so doing, "the ALJ must explain how he considered the 'supportability' and 'consistency' factors", and "may—but is not required to" discuss other factors such as the relationship with the claimant, specialization, or familiarity with program requirements. David C. v. Commissioner of Social Security, 2024 WL 376598, *4 (W.D.N.Y. 2024); see §404.1520c(b)-(c).

In this vein, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7. An unexplained omission of a medically opined limitation may require remand. See, e.g., Jacob K. v. Commissioner of Social Security, 2021 WL 4324379, *4 (W.D.N.Y. 2021) ("[b]ecause the ALJ did not provide any reason for omitting the . . . limitation, this Court has no idea whether the ALJ missed it, ignored it, or disagreed with it for some legitimate reason").

ALJ Cordovani did not discuss the supportability or consistency of Dr. Jensen's opinion. However, "courts in this Circuit have held that 'even if the ALJ failed to adequately explain his reasoning, remand is not necessary where it is conceded that any new analysis would have no effect on the ultimate determination'". Luciana A. v. Commissioner of Social Security, 2022 WL 2988094, *4 (W.D.N.Y. 2022) (citation omitted). Furthermore, "[a]n ALJ need not recite every piece of evidence that contributed to [his] decision, so long as the record permits [the Court] to glean [its] rationale". Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

Here, it is plainly evident that ALJ Cordovani was aware of Dr. Jensen's opinion but found it unpersuasive for the reasons he discussed. [3] at 31. Thus, this is not the case where it was left unclear whether a medical opinion was considered. *Cf*. Joseph M. v. Commissioner of Social Security, 2021 WL 841403, *14 (W.D.N.Y. 2021) ("the ALJ did not mention [the VA psychologist's] report, and consequently it is unclear whether the ALJ actually considered that . . . medical opinion or whether the ALJ simply overlooked the report in the voluminous record").

Even presuming that Dr. Jensen's opinion was well-supported and consistent with the medical evidence,[3] his assessments were, in ALJ Cordovani's view, vague, conclusory, and not expressed in functional terms or according to Social Security program standards. [3] at 31. Indeed, statements such as "moderate social and occupational impairment", "occasional decrease in work efficiency", or "intermittent periods of inability to perform occupational tasks" are quite open-ended and unclear in terms of how exactly plaintiff would be restricted at work. [3] at 479, 485; *see* Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) ("terms [like] 'moderate' and 'mild,' without additional information" are "so vague as to render [them] useless").

Therefore, ALJ Cordovani's rejection of Dr. Jensen's opinion was permissible. *See* Luciana A., 2022 WL 2988094 at *4 (ALJ's finding that a medical opinion "employed vague language that could not be readily translated into functional limitations" and was not supported by "a substantive explanation" were "permissible reasons to reject" it). Even if it were not, Dr.

---

[3]    The Commissioner argues that Dr. Jensen's opinion was irrelevant and inconsistent with the record. [8-1] at 13-15. However, the court "may not accept appellate counsel's *post hoc* rationalization for agency action". Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

Jensen's opinion does not compel the inclusion of any greater limitations than in ALJ Cordovani's RFC.

Plaintiff additionally argues that ALJ Cordovani's failure to find any of the psychiatric evaluations fully persuasive presented an evidentiary gap in the record. [6-1] at 20-21. However, it is the ALJ, not any medical source, who is ultimately responsible for formulating a claimant's RFC. See 20 C.F.R. §§404.1546(c), 404.1527(d)(2); Curry v. Commissioner of Social Security, 855 Fed. App'x 46, 48 (2d Cir. 2021). An ALJ's decision need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and he is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (quoting Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013)).

Here, ALJ Cordovani discounted the opinions of consultative examiner Dr. Santarpia and psychological consultants Dr. Roy-Petrick and Dr. Blackwell to the extent that they opined that plaintiff's mental health conditions were non-severe. [3] at 31-32. He instead found that "the overall record and the nature of the condition support[] some level of functional impairment", and found plaintiff's PTSD to be a severe impairment. Id. at 20, 31-32. However, he credited Dr. Santarpia's two-time assessment of "mild to moderate" limitations in various functional areas. Id. at 32, 431. Thus, plaintiff's argument that "the ALJ effectively discounted all medical opinions regarding Plaintiff's function-by-function psychiatric limitations" is simply inaccurate. Even if it were, an ALJ's well-reasoned rejection of a medical opinion does not create an evidentiary gap in the record. See Schillo, 31 F.4th at 76 ("a deficiency in reasoning by a [examining] physician is not the same as a gap in treatment records").

C. **Stress-Related Limitations**

Plaintiff further argues that ALJ Cordovani failed to make sufficiently specific findings as to the impact of stress on his ability to work. [6-1] at 22-25. While ALJ Cordovani concluded that plaintiff's PTSD was a "severe" impairment ([3] at 20), he found that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with treatment notes from the relevant period and his activities of daily living. Id. at 26-27. He nonetheless formulated an RFC that limited plaintiff to simple instructions and tasks; no supervisory duties, independent decision-making, or strict production quotas; and only minimal changes in work routine and processes. Id. at 24.

In 1985, the Commissioner published SSR 85-15 to clarify how the Social Security Administration should evaluate claimants' capacity to perform work when they have nonexertional impairments, such as mental, sensory, or postural limitations. 1985 WL 56857, *1-8. With respect to "Stress and Mental Illness" it provides that:

> "Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. . . .
>
> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. . . . Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment."

Id. at *5-6. That is, SSR 85-15 articulates the now-uncontroversial proposition that the ability to do work at any skill level may be limited in certain case-specific ways by a claimant's mental impairments, and that such limitations must be considered and incorporated in the claimant's RFC, if necessary. *See* id. at *4-6. The failure to account for such limitations requires remand. *See* Nichole K. v. Commissioner of Social Security, 2024 WL 3022592, *6 (W.D.N.Y. 2024).

Here, ALJ Cordovani did not fail to account for plaintiff's stress-related limitations. While plaintiff testified about his struggles with anxiety and its effect on his work-related abilities, ALJ Cordovani found this testimony inconsistent with the evidence, particularly plaintiff's statements to treatment providers suggesting non-disability-related reasons for leaving his previous jobs as well as having greater activities of daily living. *See* [3] at 26-27. Such first-person credibility determinations are entitled to "great deference" (*see* Christina J. v. Commissioner of Social Security, 695 F. Supp. 3d 357, 362 (W.D.N.Y. 2023)), and the court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude otherwise". Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (citations omitted). ALJ Cordovani nonetheless found that plaintiff's PTSD would cause some measure of anxiety-related limitations, and incorporated the above-referenced limitations into his RFC. Id. at 24, 32.

While ALJ Cordovani's discussion spoke primarily in terms of plaintiff's PTSD, anxiety, and various "mental health limitations" rather than stress *per se*, it is clear from his decision that he addressed any such limitations. *See* Hochstine v. Commissioner of Social Security, 2019 WL 5448287, *8-9 (W.D.N.Y. 2019) ("[a]lthough the ALJ did not specifically use the word 'stress' in the RFC finding, she imposed specific restrictions as part of Plaintiff's RFC to offset any work-place related stressors and demands with which Plaintiff might have

difficulty as a result of her mental impairments . . . . the Court finds that the ALJ complied with SSR 85-15"). Accordingly, "this Court finds that the ALJ addressed the elements of Plaintiff's stress limitation posed . . . in this case. . . . the ALJ appropriately found that Plaintiff could perform work despite her stress limitations". <u>Elizabeth E. v. Commissioner of Social Security</u>, 2024 WL 1549686, *6 (W.D.N.Y. 2024). Therefore, remand is not required.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [8] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: March 9, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge
